```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                          :
MILTON PFEIFFER,                          :
                      Plaintiff,          :   04 CIV. 7915 (DLC)
                                          :
           -v-                            :   OPINION AND ORDER
                                          :
INTEGRATED FUND SERVICES, INC., SCOTT     :
A. ENGLEHART, and TINA H. BLOOM,          :
                      Defendants.         :
                                          :
-----------------------------------------X
```

For plaintiff Milton Pfeiffer:
Eduard Korsinsky
Jean Marc Zimmerman
Zimmerman, Levi, & Korsinsky, LLP
39 Broadway, Suite 1440
New York, New York 10006

For Integrated Defendants:
John M. Aerni
Donna L. Gordon
LeBoeuf, Lamb, Greene & MacRae, LLP
125 West 55th Street
New York, New York 10019-5389

DENISE COTE, District Judge:

On October 6, 2004, plaintiff Milton Pfeiffer ("Pfeiffer"), a shareholder of the Bjurman, Barry Micro Cap Growth Fund (the "Fund"), filed the instant action, alleging that defendants Integrated Fund Services, Inc. ("Integrated"), Scott A. Englehart ("Englehart"), and Tina H. Bloom ("Bloom") (collectively the "Integrated Defendants") violated Section 36 of the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-35(b), by receiving, or by approving the receipt of, "grossly inflated" administrative and transfer agent fees from the Fund. Pursuant to Rule 12(c), Fed. R. Civ. P., the Integrated Defendants have moved for judgment on the pleadings. For the reasons stated herein, the defendants' motion is granted.

Background

The following facts are taken from the plaintiff's complaint and the documents upon which it relies. Pfeiffer owns shares in the Fund, a mutual fund that closed to new investors on May 30, 2003. The Fund's investment adviser is Bjurman, Barry & Associates ("BBA"),[1] and its principal underwriter is IFS Fund Distributors, Inc. ("IFS"), an "affiliated broker/dealer" of Integrated.[2] Integrated's business is to provide mutual fund companies, including the Fund, with "fund administration, fund accounting, transfer agency, financial reporting, and shareholder servicing and distribution services." Two officers of Integrated, Englehart and Bloom, also serve as officers of the Fund. Englehart, Integrated's president, has served as treasurer of the Fund since 2002. Bloom, who is executive vice president of Integrated and its managing attorney, has served as the Fund's secretary since 1999.

Pursuant to a December 18, 1998 Administrative Agreement (the "Administrative Agreement") between the Fund and

---

[1] Pfeiffer has filed a separate, albeit related, action against BBA and the Fund, alleging that they violated their fiduciary duties under Section 36(b) by charging excessive promotion, distribution, administrative, transfer agent and "other" fees. On August 26, 2004, the defendants' motion to dismiss that action was granted as to the administrative, transfer agent, and "other" fees on the ground that Section 36(b) permits suits only against the recipients of such fees and that Integrated was not a party in that action. See Pfeiffer v. Bjurman, Barry & Assoc., No. 03 Civ. 9741 (DLC), 2004 WL 1903075, at *4 n.11 (S.D.N.Y. Aug. 26, 2004). The motion was denied, however, with respect to marketing, distribution, and service fees imposed by the Fund. Id. at *5.

[2] IFS is described as such on Integrated's own website. See Distribution Services, at http://www.integratedfundservices.com/distribution.html.

Integrated's predecessor, Countrywide Fund Services, Inc., Integrated performs a range of administrative and other services on behalf of the Fund, including the preparation of tax returns, reports to shareholders, SEC filings and similar filings with state securities authorities, and materials for Board of Trustees' meetings. Under the Administrative Agreement, Integrated receives .150% of the Fund's average daily net assets up to $25 million; .0125% of such assets between $25 and $50 million; and .100% of such assets in excess of $50 million. At a minimum, the Agreement provides that Integrated will receive $2,000 per month. As the Fund's asset base has ballooned from $7 million to over $800 million, Integrated's compensation under this "antiquated fee structure" has increased substantially as well. Between April 1, 2002 and March 31, 2003, for instance, Integrated charged the Fund administrative fees of $353,487. More significantly, despite the fact that the Fund closed to new investors in May 2003, which Pfeiffer believes should have diminished the need for administrative services, for the year ending March 31, 2004, Integrated received $811,738 in administrative fees from the Fund.

Aside from the administrative fees, Integrated also receives transfer agent fees pursuant to a December 18, 1998 Transfer, Dividend Disbursing, Shareholder Service and Plan Agency Agreement ("Transfer Agent Agreement"), which provides that Integrated will also perform services related to issuing share certificates, executing purchase orders, maintaining shareholder records, mailing proxies, and other administrative functions. The Transfer Agent Agreement provides that Integrated will

receive $20 per account per year and that its monthly fee will be no less than $2,000. For the year ending March 31, 2003, the Fund paid Integrated $96,500 in transfer agent fees. The next year, Integrated received $162,197 in transfer agent fees, even though the Fund was closed to new investors for ten of those twelve months.

According to Pfeiffer, the Fund's administrative and transfer agent payments to Integrated are funded through an ongoing "asset-based charge on fund shareholders to pay for administrative and other back-office services." Like the payments to Integrated that the charge facilitates, Pfeiffer alleges that the charge itself "bear[s] no reasonable relation to the actual services provided to the Fund," but instead merely reflects "the significant appreciation of the Fund's asset base."

Pfeiffer filed the instant action on October 6, 2004, in which he charges that Integrated received excessive administrative and transfer agent fees and that there is "no rational justification" for the dramatic increase in such fees over time. Pfeiffer further alleges that by allowing the Fund to pay "grossly inflated" fees to Integrated, Englehart and Bloom have violated their "fiduciary duty to the Fund and its shareholders to ensure that the fees and expenses paid by the Fund to Integrated for administrative and other services have a reasonable relationship to the actual services provided by the Fund to Integrated." As such, Pfeiffer charges, they have violated Section 36(b) of the ICA, 15 U.S.C. § 80a-35(b). Englehart and Bloom's dereliction of duty is particularly egregious, according to Pfeiffer, due to their dual roles as

4

officers with Integrated as well as with the Fund. Through his suit, he seeks to "recover the improper administrative fees, transfer agent fees and any other expenses paid by the Fund to Integrated," as well as "to enjoin defendants from overcharging the Fund in the future."

Through a January 19, 2005 Order, the defendants were granted permission to file a third-party complaint in this action against The Bjurman, Barry Funds; G. Andrew Bjurman, O. Thomas Barry III; Mark K. Mason; William L. Wallace; and Joseph E. Maiolo (collectively "the Bjurman Parties") by February 4. This third-party complaint was filed on January 26.

On February 17, 2005, a pretrial conference relating to both the instant action and Pfeiffer's related action against BBA and the Fund was held. At that conference, the Integrated defendants expressed their desire to bring the instant motion, explaining their view that Section 36 of the ICA solely addresses fees for advisory services, which they had not rendered, and arguing that none of the Integrated defendants fell into any of the statutory definitions of those who could be liable under that section. A scheduling order relating to the motion was issued on the same day, and the motion was fully submitted on April 1.[3]

---

[3] On March 22, 2005, the Bjurman Parties submitted a brief in support of defendants' motion. Pfeiffer contends that this brief should be disregarded on the grounds that the Bjurman Parties lack standing to assert arguments on behalf of the Integrated Defendants and that the scheduling order pertaining to this motion did not afford the Bjurman Parties an opportunity to submit a brief. Because the defendants' motion can be granted without consult to the Bjurman Parties' brief, it is unnecessary to consider Pfeiffer's effort to have it excluded.

5

Discussion

"[T]he legal standards for review of motions pursuant to Rule 12(b)(6) and Rule 12(c) are indistinguishable." DeMuria v. Hawkes, 328 F.3d 704, 706 n.1 (2d Cir. 2003). When considering a motion to dismiss, a court must "accept[] as true the factual allegations in the complaint as true and draw[] all inferences in the plaintiff's favor." Scutti Enters., LLC v. Park Place Entm't Corp., 322 F.3d 211, 214 (2d Cir. 2003) (citation omitted). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004).

Pfeiffer's claims are governed by Rule 8, which requires that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a), Fed. R. Civ. P. Pleadings are to give "fair notice" of a claim and "the grounds upon which it rests" in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case. Dura Pharm., Inc. v. Broudo, 125 S. Ct. 1627, 1634 (2005) (citation omitted); see also Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002). Rule 8 is "not meant to impose a great burden upon a plaintiff." Broudo, 125 S. Ct. at 1634. Rather, "[t]he federal rules allow simple pleadings and rely on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Phillip v. Univ. of Rochester, 316 F.3d 291, 293 (2d Cir. 2003) (citation omitted). Because Rule 8 is fashioned in the interest of fair and reasonable

6

notice, not technicality, "extensive pleading of facts is not required." Wynder v. McMahon, 360 F.3d 73, 77 (2d Cir. 2004) (citation omitted). If it is clear, however, that "no relief could be granted under any set of facts that could be proved consistent with the allegations," the complaint should be dismissed. Swierkiewicz, 534 U.S. at 514.

Section 36 of the ICA contains two subsections of importance to this motion. Subsection (a) authorizes the SEC to bring an action to enjoin a breach of fiduciary duty by an "officer, director, member of any advisory board, investment adviser, or depositor" of a registered investment company or certain underwriters of a registered investment company.[4] 15 U.S.C. § 80a-35(a). The SEC may bring the action against the persons described above for any breach of fiduciary duty "involving personal misconduct." Id.

---

[4] Section 36(a) provides in relevant part:

> The Commission is authorized to bring an action in the proper district court of the United States, or in the United States court of any territory or other place subject to the jurisdiction of the United States, alleging that a person serving or acting in one or more of the following capacities has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts --
>
> (1) as officer, director, member of any advisory board, investment adviser, or depositor; or
>
> (2) as principal underwriter, if such registered company is an open-end company, unit investment trust, or face-amount certificate company.

15 U.S.C. § 80a-35(a).

Subsection (b) sets forth a more specific fiduciary duty owed by the investment adviser of a registered investment company. In relevant part, it provides:

> the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the <u>receipt of compensation for services, or payments of a material nature</u>, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser.

15 U.S.C. § 80a-35(b) (emphasis supplied). Subsection (b) further enables either the SEC or a person holding securities in a registered investment company to bring an action against three categories of persons, specifically, to bring an action

> on behalf of such company, <u>against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments</u>, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

15 U.S.C. § 80a-35(b) (emphasis supplied).[5]

---

[5] Section 36(b) provides, in relevant part:

For the purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person. . . .

8

The ICA defines an "affiliated person" of another person as

> (A) any person directly or indirectly owning, controlling, or holding with power to vote, 5 per centum of the outstanding voting securities of such other person; (B) any person 5 per centum or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by such other person; (C) any person directly or indirectly controlling, controlled by, or under common control with, such other person; (D) any officer, director, partner, copartner, or employee of such other person; (E) if such other person is an investment company, any investment adviser thereof or any member of an advisory board thereof; and (F) if such other person is an unincorporated investment company not having a board of directors, the depositor thereof.

15 U.S.C. § 80a-2(a)(3). The class of actions that may be brought under Section 36(b) is further limited by Subsection (b)(3), which mandates that "<u>[n]o such action shall be brought</u> or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted <u>against any person other than the recipient of such compensation or payments</u>." 15 U.S.C. § 80a-35(b)(3) (emphasis supplied).

Reading these provisions together, a security holder may sue an investment adviser, a person affiliated with an investment adviser, or one of those persons enumerated in subsection (a) who has a fiduciary duty with respect to the receipt of compensation for services or payments of a material nature paid by a registered investment company or its security holders. The suit must allege a breach of fiduciary duty in respect to the compensation for services or payments of a material nature paid

---

15 U.S.C. § 80a-35(b).

9

by the registered investment company or its security holders to the defendant.

The Integrated Defendants argue that under the case law of this Circuit, "liability under § 36(b) must be predicated on either a party's being the investment adviser or an affiliate of it, <u>or</u> a party's having received payments or compensation for investment advisory services." (Emphasis supplied.) Specifically, the Integrated Defendants contend that as Pfeiffer's complaint alleges neither that they receive compensation for investment advisory services nor that any of the defendants are affiliated persons of the investment adviser, as the term "affiliated person" is defined within the ICA, they are entitled to judgment on the pleadings. There is no requirement, either within the statutory language or the controlling case law, that a party must render investment advisory services to be liable under Section 36(b). Nearly two decades ago, the Second Circuit expressly rejected the argument that Section 36(b) "deals only with compensation for <u>advisory</u> services" in <u>Meyer v. Oppenheimer Management Corp.</u>, 764 F.2d 76 (2d Cir. 1985) ("<u>Meyer I</u>"), noting the provision's "broad scope" and express application "to payments made to 'any affiliated person' of the investment adviser." <u>Id.</u> at 82.

In a second case entitled <u>Meyer v. Oppenheimer Management Corp.</u>, 895 F.2d 861 (2d Cir. 1990) ("<u>Meyer II</u>"), our Circuit reiterated that Section 36(b) applies to compensation for services other than those of a purely advisory nature. Resisting the plaintiff's attempt to aggregate Rule 12b-1 payments to an investment adviser's affiliates with advisory fees "to determine

10

the merits of a Section 36(b) claim," the Meyer II court held
that a court instead must assess whether the Rule 12b-1 fees
"viewed separately [are] . . . excessive in relation to the
service rendered." Id. at 866. In so holding, the Meyer II
court clarified that "the costs of 12b-1 plans . . . as well as
advisory fees are subject to review under Section 36(b)." Id.
Therefore, to the extent that Integrated's construction of
Section 36(b) relies on Halligan v. Standard &
Poor's/Intercapital, Inc., 434 F. Supp. 1082, 1085 (E.D.N.Y.
1977), and its progeny,[6] those cases cannot be squared either
with the plain language of the statute or the Meyer decisions.

The Integrated Defendants' belief that a party must either
be an investment adviser or an affiliated party thereof in order
to be liable under Section 36(b) is also incorrect. An
interpretation of statutory language must "begin with the
language employed by Congress and the assumption that the
ordinary meaning of that language accurately expresses the
legislative purpose." Engine Mfrs. Ass'n v, S. Coast Air Quality
Mgmt. Dist., 541 U.S. 246, 252 (2004) (citation omitted).
Section 36(b) not only allows a shareholder to sue an investment
adviser or "any affiliated person of such investment adviser,"
but plainly provides that he also may sue "any other person
enumerated in [Section 36(a)] who has a fiduciary duty concerning

---

[6] See also Levy v. Alliance Capital Mgmt., No. 97 Civ. 4672
(DC), 1998 WL 744005, at *4 (S.D.N.Y. Oct. 26, 1998); In re
TCW/DW N. Am. Govt. Income Trust Sec. Litig., 941 F. Supp. 326,
343 (S.D.N.Y. 1996); Jerozal v. Cash Reserve Mgmt., Inc., No. 81
Civ. 1569, 1982 WL 1363, at *6 (S.D.N.Y. Aug. 10. 1982).

11

such compensation or payments." 15 U.S.C. § 80a-35(b) (emphasis supplied).

The legislative history of Section 36(b) endorses this straightforward reading of its text. As the Senate committee report accompanying the 1970 amendments to the ICA demonstrates, the enacting Congress understood Section 36(b) to allow:

> [a]n action for breach of fiduciary duty [to] be brought not only against the investment adviser but also against any officer, director, member of any advisory committee, depositor, or principal underwriter of the investment company who, under the circumstances, may also have a fiduciary duty in respect to the payments received.

S. Rep. No. 91-184, reprinted in 1970 U.S.C.C.A.N. 4897, 4910. Another section of this report further clarifies Congress's intent that three separate categories of persons can be sued under Section 36(b).

> We have added a new section 36(b) to the Investment Company Act to specify that the adviser has a fiduciary duty with respect to compensation for services or other payments paid by the fund or its shareholders to the advisor or to affiliated persons of the advisor. Other persons enumerated in Section 36(a) who may have a similar fiduciary duty with respect to compensation or payments received by them from the fund or its shareholders may also be sued for a breach of such duty. Subsection (b) also provides that payments by the fund to affiliated persons of the adviser are subject to challenge under this section.

Id. at 4902 (emphasis supplied). Therefore, not only is the plain meaning of Section 36(b) embraced by its legislative history, but such an interpretation allows Section 36 to function "as a symmetrical and coherent regulatory scheme" into which "all parts [fit] into a harmonious whole." FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (citation omitted) (discussing Food, Drug, and Cosmetic Act).

12

With respect to the Integrated Defendants, it is undisputed that they are not investment advisers as that term is defined by the ICA. See 15 U.S.C. § 80a-2(a)(20). It is similarly undisputed that BBA is the Fund's investment adviser. Therefore, the phrase "affiliated person of such investment adviser" pertains in this case to affiliates of BBA. To qualify as an "affiliated person" of BBA, a defendant would need to be a shareholder of or otherwise affiliated with BBA. See id. at § 80a-2(a)(3)(A)-(D). Pfeiffer has alleged no facts, however, that give the Integrated Defendants fair notice that his claim rests on their satisfying the "affiliated person of such investment adviser" prong of Section 36(b). Broudo, 125 S. Ct. at 1634.

As described above, the third and final category of persons who can be sued under Section 36(b) are those enumerated in Section 36(a) who have a fiduciary duty with respect to compensation for services or payments of a material nature made by the investment company or their security holders. Although Integrated is a recipient of "such compensation or payments," see 15 U.S.C. 80a-35(b)(3), Pfeiffer has failed to allege that Integrated itself is a person enumerated under Section 36(a), thus depriving Integrated of fair notice of the grounds upon which the claim against it rests. Broudo, 125 S. Ct. at 1634. Pfeiffer's claims against Englehart and Bloom fail for precisely the opposite reason. As officers of the Fund, Englehart and Bloom qualify as persons enumerated in Section 36(a). Yet nowhere in his complaint does Pfeiffer allege that Englehart and Bloom have received administrative and/or transfer agent fees.

Instead, the complaint alleges that those fees were paid to Integrated.

Pfeiffer relies particularly on an SEC statement incorporated in a House of Representatives committee report that was quoted in Meyer I to support his argument that Integrated, as an affiliated of a person listed in subsection (a) of Section 36, may be liable. The SEC statement asserted that

> the statutory requirement . . . would apply to all forms of compensation paid by all investment companies to their affiliated persons, principal underwriters, and affiliates of such persons. This would include all forms of compensation paid to officers, directors, advisory board members, trustees, sponsores, investment advisers, principal underwriters, and controlling persons of both externally and internally managed companies as well as persons or organizations with which such persons are affiliated.

Meyer I, 764 F.2d at 82 (quoting H.R. Rep. No. 2337, at 144 (1966)) (emphasis in original). Pfeiffer's preferred construction of Section 36(b) is not only contradicted by the statute's legislative history, but it also violates a canon of statutory interpretation: that "the meaning of a statute will typically heed the commands of its punctuation." U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 454 (1993). Had Congress intended for Section 36(b) to apply to the affiliated persons of "any other person enumerated in subsection (a)," it would not have separated these two phrases with a comma. United States v. Ron Pair Enters., 489 U.S. 235, 241 (1989) (discussing grammatical rules in construing a statute, including the role of a comma). Moreover, the passage from Meyer I on which Pfeiffer relies does not dictate a different result. Rather than holding that Section 36(b) encompasses affiliates of

14

principal underwriters, as Pfeiffer contends, it merely excerpts SEC commentary preceding the enactment of Section 36(b) by four years for the proposition that the provision has a "broad scope." Meyer I, 764 F.2d at 82. Consequently, the Integrated Defendants' motion for judgment on the pleadings is granted.

## Conclusion

For the reasons stated above, the Integrated Defendants' motion for judgment on the pleadings is granted. The Clerk of Court shall close the case.

SO ORDERED:

Dated:   New York, New York
         May 18, 2005

_____
DENISE COTE
United States District Judge

15